UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

      Plaintiff,

v.

REGINALD RAYNARD IRBY,

      Defendant.

Criminal No. 17-20190

HON. MARK A. GOLDSMITH

**OPINION & ORDER
(1) GRANTING THE GOVERNMENT'S REQUEST TO REVOKE THE RELEASE ORDER AND (2) ORDERING DEFENDANT DETAINED PENDING FURTHER PROCEEDINGS**

    The Government has filed a petition alleging that Defendant Reginald Irby violated the conditions of his supervised release by possessing and delivering controlled substances and providing false information to his probation officer. Order with Petition for Issuance of Emergency Warrant (Dkt. 108). After Irby was arrested on these allegations, Magistrate Judge Anthony Patti held a detention hearing on December 6, 2021 and ordered Irby released on bond. The Government appealed the magistrate judge's release order and requested that the Court revoke the release order. This Court held a hearing on the Government's request on December 7, 2021. As explained below, the Court concludes that Irby cannot meet his burden of establishing by clear and convincing evidence that he will not flee or pose a danger to any other person or to the community. Accordingly, the Government's request to revoke the release order is granted, and Irby is ordered detained pending further proceedings.

## I. BACKGROUND

    Irby is no stranger to the criminal justice system. His criminal history dates back to 1987 and includes twelve adult criminal convictions, at least seven of which involved drug dealing. Including this case, he has been sentenced to prison three times. He violated parole and was

returned to prison in the 1990s, violated probation in 2006 and was placed on house arrest, and violated probation by engaging in the drug conspiracy that led to his federal conviction in this case.

The instant case began several years ago. In June 2017, Irby pleaded guilty to conspiracy to possess with intent to distribute a controlled substance. See Rule 11 Plea Agreement (Dkt. 46). During that conspiracy, he managed a street-level crack cocaine distribution operation and directed the activities of at least two of his codefendants, Tonalynn Bernard and Sharon Irving. Id. at 2–3. During a traffic stop in June 2015, Irby directed Irving to conceal an ounce of crack cocaine from investigating officers. Id. at 3. During another traffic stop in February 2016, Irby locked the doors and swallowed several baggies of crack cocaine, and police had to break the windows and take him to the hospital. Id. at 3–4. A search of the hotel room that Irby had been occupying led to the discovery of crack cocaine, packaging material, cooking and distribution paraphernalia, and a large amount of cash under a mattress. Id. at 4.

On December 6, 2017, the Court sentenced Irby to four years' imprisonment, followed by four years of supervised release. Judgment (Dkt. 64). Due to Irby's long history of substance abuse, the Court imposed a special condition requiring him to participate in a program for substance abuse approved by the Probation Department. Id. at 5.[1] Irby's supervised release from prison began on March 13, 2020. As relevant here, Irby's supervised release conditions prohibit him from committing another crime, forbid him from unlawfully possessing or using any controlled substance, require him to truthfully answer questions asked by his probation officer, and forbid him from communicating or interacting with someone known to be engaged in criminal activity or convicted of a felony. Id. at 3–4.

---

[1] Irby has reported daily crack cocaine use (beginning when he was sixteen), regular use of marijuana, and abuse of Adderall (from around 2011–2012 through his arrest in this case in 2017).

On April 7, 2021, Irby was arrested for operating a vehicle while intoxicated and leaving the scene of an accident. Order with Request Modifying Terms of Supervised Release (Dkt. 98). According to the violation report filed by his probation officer, Irby hit a parked vehicle around 3:47 a.m., fled the scene, parked in a driveway, and entered the home of a woman who "appeared shaken and in fear" when officers arrived. Irby was clearly intoxicated, and his vehicle contained an open bottle of liquor and $1,104 in cash. Id. at 2. As a result, Irby's conditions were made more restrictive. Specifically, Irby was required to submit to location monitoring for a period of up to 90 days, starting in late June. Id. at 2, 5. His probation officer reports that Irby was often not where he was supposed to be during this period. Further, Irby was required to refrain from using or possessing alcohol in any consumable form. Id.

According to Irby's probation officer, on October 27, 2021, Irby was caught using a Whizzinator—a device that provides synthetic urine—to defeat a drug test administered in the probation office. Order with Petition for Issuance of Emergency Warrant at 3. He was then tested again, yielding positive results for cocaine and marijuana. Id. According to the probation officer, Irby admitted to actively using marijuana, cocaine, and alcohol; Irby also admitted to previous use of the Whizzinator for a couple of months to "pass" tests given by the Probation Department and by Shanle Psychological Services. Id.

Probation referred Irby to in-patient treatment, from which he was discharged on November 24, 2021. According to Irby's probation officer, on November 29, Irby falsely told Probation that he had contracted COVID-19 and would not be available for the scheduled field stop. Id. Apparently to bolster this false statement, Irby provided a false medical record as evidence of his positive test.

Irby told Probation that he would be in quarantine at his cousin's house in Novi. Id.

3

However, on November 30, Irby was arrested at a Quality Inn hotel in Roseville after Michigan State Police officers observed a drug transaction conducted from a vehicle in the hotel's parking lot. Id. at 2. Officers made contact with the vehicle; Bernard was in the driver's seat and Irby was in the passenger seat. Id. Bernard is currently on federal supervised release and on bond for a previous violation. Id. When Irby was arrested, he was in possession of approximately 88 oxycodone pills and thirteen crack cocaine rocks, concealed in his groin area. Irby was also found to be chewing and attempting to swallow more crack cocaine. Id. Irby and Bernard consented to a search of their hotel room, resulting in the discovery of approximately 102 more oxycodone pills and ten pills identified as amphetamine. Id.

After his arrest on November 30, Irby was taken to a hospital. He has proffered that he was diagnosed with pneumonia and advised, on discharge, to schedule an appointment with a cardiologist.

## II. ANALYSIS

Because Irby is before the Court on alleged violations of supervised release, this proceeding is governed by the standard set forth in Federal Rule of Criminal Procedure 32.1. Pursuant to Rule 32.1(a)(6), a magistrate judge may release or detain a defendant under 18 U.S.C. § 3143(a)(1) pending further proceedings. Section 3143(a)(1), in turn, requires detention "unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(a)(1). The burden of establishing by clear and convincing evidence that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant. Fed. R. Crim. P. 32.1(a)(6).

Defendants may challenge a magistrate judge's release order before a district court judge

under 18 U.S.C. § 3145. District courts conduct such a review de novo. See United States v. Carter, No. 1:20-cr-62-1, 2021 WL 687858, at *2 (S.D. Ohio, Feb. 23, 2021) (explaining that "[a]lthough there seems to be some dispute on the precise standard of review under that statute in the Sixth Circuit, it appears that de novo review for this type of challenge is the majority rule," which is consistent with the standard utilized in seven other circuits).

Irby contends that he is currently suffering from pneumonia and a heart condition, seemingly suggesting that his need to seek treatment for these health conditions will minimize his risk of fleeing or posing a danger to others. However, Irby's recent untruthful statements about his COVID-19 diagnosis and submission of false medical documents—which enabled him to return to drug use and dealing with his longtime partner, Bernard—cast serious doubt as to whether Irby is now being truthful about his purported pneumonia and heart condition.

Even if Irby is being truthful, the Court is not convinced that these health conditions would keep Irby from returning to criminal activity. Irby has demonstrated that his behavior cannot be reliably controlled by conditions. Despite conditions prohibiting him from possessing, using, or dealing substances, Irby has repeatedly—and recently—done just that. Significantly, there is no evidence or reason to believe that he uses and deals drugs only when he is healthy.

Nor would home detention suffice to prevent Irby from engaging in more criminal activity. Irby has directed others to engage in criminal activity, which he could very well do from his home. Further, because Irby has allegedly continued to abuse substances while on location monitoring and in outpatient therapy, there is no reason to believe that he would not continue to do so from his home. In addition, Irby's failure to be where he was supposed to while on location monitoring—as well as his lying to his probation officer about his whereabouts to enable him to continue his criminal activities—raises serious doubt that Irby would even remain at home (and

5

avoid leaving his home to engage in illegal activities) if placed on home detention.

Put simply, the Court finds that Irby has not carried his burden to show by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if he is permitted to remain released on bond. Rather, the Court concludes that if permitted to remain released on bond, Irby is likely to commit further substance-related violations, and the Court has no confidence that Irby's substance-related compulsions will yield to any condition it can impose.

### III. CONCLUSION

For the foregoing reasons, the Government's request to revoke the magistrate judge's release order is granted, and Irby is ordered detained pending further proceedings in this matter.

Irby is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Irby must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver Irby to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

SO ORDERED.

Dated: December 8, 2021　　　　　　　　　　s/Mark A. Goldsmith
　　　　　Detroit, Michigan　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge